UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VIRGINIA BARRERA | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CA-665 XR |
| | § | |
| MTC, INC. d/b/a MI TIERRA CAFÉ AND | § | |
| BAKERY d/b/a LA MARGARITA | § | |
| RESTAURANT & OYSTER BAR, and d/b/a | § | |
| RESTAURANTE PICO DE GALLO | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

On this day, the Court considered Plaintiff's Motion for Partial Summary Judgment (docket no. 40) and the response and reply thereto. The issue before the Court is whether a genuine question of material fact exists regarding Defendant's use of the tip-pool exception to their minimum wage obligations. Because the Court concludes a question of fact exists regarding whether or not Defendant's service bartenders are "customarily and regularly" tipped, the Court DENIES Plaintiff's motion.

**I. Background**

Plaintiff and the opt-in plaintiffs she represents allege that the Defendant, Mi Tierra, violated the Fair Labor and Standards Act (FLSA) by incorrectly relying on the tip-credit/tip-pooling exception to the FLSA's minimum-wage requirement (an exception that allows employers to pay $2.13 instead of $7.25 per hour). 29 U.S.C.A. §§ 203(m, t), 206(a)(1) (2006). Specifically, Plaintiff claims that the Defendant includes "service bartenders" in the tip pool, that service bartenders are as a matter of law

1

ineligible for inclusion in a tip pool, that the pool is therefore invalid, and that the Defendant is thus not exempt from the mandate to pay its employees minimum wage.[1] The Defendant does not deny that its service bartenders are included in the tip pool, but argues that this inclusion is not a violation of the FLSA.[2]

Under the FLSA, an employer must pay their employees minimum wage, unless the employees are "engaged in an occupation in which [they] customarily and regularly receive more than $30 dollars a month in tips." § 203 (m, t). However, the employees must be allowed to keep all of their tips, either individually or through a tip pool. § 203 (m). Moreover, a tip pool can only contain "employees who customarily and regularly receive tips." § 203(m). "The phrase 'customarily and regularly' signifies a frequency which must be greater than occasional, but which may be less than constant." 29 C.F.R. § 531.57 (2011). Still, as this District and its sister courts have found, neither "the language of FLSA nor the relevant regulations provide much clear guidance" regarding which employees are validly included in a mandatory tip pool. *Pedigo v. Austin Rumba, Inc.,* 722 F.Supp.2d 714, 728 (W.D. Tex. 2010) (J. Nowlin) (quoting *Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079, at *6 (S.D. Tex July 9, 2008)).

Of course, in considering Mi Tierra's tip-credit exemption from the FLSA's minimum wage requirement, the Court will adhere to the Fifth Circuit's instruction that "[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them." *Donovan v. Brown Equip., and Serv. Tools, Inc.*, 666 F.2d 148, 153 (5th Cir.1982).

At Mi Tierra, servers are required to "tip out" two percent of gross sales into a tip pool that

---

[1] Pl.'s Mot. Summ. J. 5, May 5, 2011 (Docket Entry No. 40).

[2] Def.'s Resp. 2, May 19, 2011 (Docket Entry No. 44).

is then split between bussers, hosts, counter servers, and "service bartenders."[3] "Service bartender" is a restaurant term that refers to bartenders who provide drinks to customers through servers, but have little *direct* contact with customers.[4] Though the bar at Mi Tierra is located in sight of customers, customers do not order drinks from bartenders and the bartenders do not receive tips directly.[5]

Plaintiff claims that Mi Tierra's service bartenders are incorrectly included in the tip pool because they are not "customarily and regularly" tipped as a matter of law.[6] To warrant her claim, Plaintiff points to Mi Tierra's concession that their service bartenders "are not *directly* interacting with the customers," and do not "*directly* serve customers."[7]

## II. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167,

---

[3]Declaration of George P. Cortez ¶ 4–5, May 19, 2011 (Def.'s Resp., Ex. A).

[4]Def.'s Resp. at 2.

[5]Deposition of George P. Cortez 14:2–16:6; 40:13–40:16, November 5, 2010 (Pl.'s Mot. Summ. J., Ex. 4.).

[6]Pl.'s Mot. Summ. J. at 11.

[7]Pl.'s Mot. Summ. J. at 6; Cortez Depo. at 16:1–17:3 (emphasis added).

178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

### III. Analysis

Plaintiff's Motion for Summary Judgment relies on the premise that Mi Tierra's service bartenders do not interact with customers *directly* and, from this, concludes that they are not "customarily and regularly" tipped.[8] Mi Tierra concedes Plaintiff's premise, but argues that service bartenders are a valid tip-pool inclusion *per se*[9] or, in the alternative, that direct customer interaction is not necessary.[10] The Court rejects Mi Tierra's claim that simply calling its employees "service bartenders" validates their tip-pool inclusion *per se*.[11] Thus, the important question before this Court

---

[8] Pl.'s Mot. Summ. J. at 6, 15-16.

[9] Def.'s Resp. at 9.

[10] Def.'s Resp. at 13-15.

[11] *Infra* at 9-10; Def.'s Resp. at 17.

4

is whether Mi Tierra's service bartenders could reasonably be considered "customarily and regularly" tipped, even though their *direct* customer interaction is slight. If the Court were to find that direct customer interaction is a necessary prerequisite to an employee being considered "customarily and regularly" tipped, then summary judgment would be granted.

**A. Legislative History and Industry Custom Distinguish Between "Front-of-the-House" and "Back-of-the House" Employees; Those in the "Front-of the-House" Often Share in Tip Pools**

**1. Legislative History**

In a report on the 1974 amendments to Section 203(m), the Senate Committee on Labor and Public Welfare clarified the FLSA's somewhat vague language:

> Nor is the requirement that the tipped employee retain such employee's own tips intended to discourage the practice of pooling, splitting, or sharing tips with employees who customarily and regularly receive tips-e.g., waiters, bellhops, waitresses, countermen, *busboys, service bartenders*, etc. On the other hand, the employer will lose the benefit of this exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips-e.g., janitors, *dishwashers, chefs*, laundry room attendants, etc.

S. Rep. 93-690, at 43 (Feb. 22, 1974) (emphasis added) [hereinafter Senate Report]. The Department of Labor Field Operations Handbook (DOL Handbook)[12] lists the same examples and controlling language of the Senate Report almost verbatim. *See* DOL Handbook Ch. 30, §30d04(a,c) (Dec. 9, 1988); *see also* DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997) (reiterating the DOL

---

[12]"The Field Operations Handbook (FOH) is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance. The FOH was developed by the WHD under the general authority to administer laws that the agency is charged with enforcing. The FOH reflects policies established through changes in legislation, regulations, court decisions, and the decisions and opinions of the WHD Administrator. Further, the FOH is not used as a device for establishing interpretative policy." United States Department of Labor: Wage and Hour Division, http://www.dol.gov/whd/FOH/ (Last visited July 26, 2011).

Handbook and the Senate Report) [hereinafter DOL Opinion Letter].[13] The Code of Federal Regulations (CFR), on the other hand, names only a "busboy" to illustrate who is valid for tip-pool inclusion. 29 C.F.R. § 531.54 (2011). However, none of these sources attempt to explain the distinguishing criterion between the examples. But, the DOL Handbook does add that "[i]t is not required that all employees who share in tips must themselves receive tips from customers." DOL Handbook § 30d04(a).

To resolve this dilemma, the Court assumes our sister court's premise that employees who "are visible to and interact with the public also are likely to make greater contributions to customer service." *Roussell,* 2008 WL 2714079, at *10. Moreover, the Court takes note of the DOL Opinion Letter: "[i]t is *customary* for waiters/waitresses to receive gratuities and share them with the busboys/busgirls *who assist* in serving the patrons." DOL Opinion Letter, 1997 WL 998047 (emphasis added). Finally, the Court looks to the CFR's definition of a tip as a "sum of money presented by a customer as a gift or gratuity *in recognition* of some service performed for him." 29 C.F.R. § 531.52 (2011) (emphasis added); *see also* S. Rep. 93-690 at 42 (reiterating this definition). Keeping these premises in mind, the Court returns to the Senate Report and infers that the distinguishing criterion between the two categories of employees listed is the degree of customer service that influences tips–be it visible or direct. *See* C.F.R. § 531.52; S. Rep. 93-690 at 42-3; *Pedigo,* 722 F.Supp.2d at 730.

While a previous court in the Western District of Texas and like-minded sister courts have

---

[13]"Interpretive and opinion letters by the Department of Labor do not per se bind the court. Such materials, however, do 'constitute a body of experienced and informed judgment' and the court will give these materials 'substantial weight.'" *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (5th Cir. 2001) (internal citation omitted).

relied mostly on direct customer interaction to distinguish the two categories, those courts have also concluded "that an employee might be considered to perform 'important service functions' even if the employee does *not directly* interact with customers, i.e. their functions are more like a server, busser, etc. than like a cook, dishwasher, etc." *Pedigo,* 722 F.Supp.2d at 730, 732 (quoting *Roussell,* 2008 WL 2714079, at *10) (also relying on a lack of customer service duties) (emphasis added). "The inquiry, therefore, requires an examination of the employees' overall duties, as well as the extent of their direct customer interaction." *Roussell,* 2008 WL 2714079, at *10. Put simply, direct interaction is not strictly necessary; visible customer service may also be sufficient. *See Pedigo,* 722 F.Supp.2d at 730. However, Judge Ellison raised a relevant concern in dicta:

> . . . it is difficult to know exactly what the Senate Committee. . . considered a service bartender's job to entail. . . if the Court is to presume that a service bartender has no interaction with customers and simply prepares drinks. . . it is not clear why a service bartender would be included. . . while cooks, who perform fairly analogous tasks, may not.

*Roussell,* 2008 WL 2714079, at *10 n. 43.

To answer Judge Ellison's concern, the Court looks to the degree of visible customer service. "Nothing in the statute specifically requires that an employee who shares in a tip pool interact directly with customers." *Id.* at *7 (quoting *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 671 n.5 (N.D.Tex.2007)). Direct customer interaction is merely a common trait among many employees who are "customarily and regularly" tipped. *See Pedigo,* 722 F.Supp.2d at 730. It is not the sole categorical distinction in the Senate Report, nor the sole reason customers increase their tips. *Id.*; *see also* S. Rep. 93-690 at 43. At most restaurants for instance, a busboy–much like a Mi Tierra service bartender–rarely interacts with customers *directly*. *See Lentz*, 491 F.Supp.2d at 670-71. In fact, a busboy's job is much like a dishwasher's, except that a busboy *visibly serves* the customer.

7

Compare *Pedigo,* 722 F.Supp.2d at 732, with *Lentz,* 491 F.Supp.2d at 670-71. When taken with the CFR's definition of a tip as money given "*in recognition* of some service performed," it becomes clearer why the Senate Report considers a busboy to be "customarily and regularly" tipped, but not a dishwasher. S. Rep. 93-690 at 42-3 (also reiterating 29 C.F.R. § 531.52's tip definition). Customers tip in recognition of services performed for them. *See* 29 C.F.R. § 531.52. This recognition most often comes from direct interaction with an employee, but it can also come from a customer visibly witnessing a service being performed to their benefit. *See Id.*; *Pedigo,* 722 F.Supp.2d at 730. This bright line somewhat resolves Judge Ellison's concern about the Senate Report's categorical distinction: a cook does not usually perform visible customer service–a service bartender may. *See Roussell,* 2008 WL 2714079, at *10.

However, almost all restaurant employees have some nexus with and make some contribution to customer service. Moreover, arguendo, there may be the occasional customer who increases their tip because they enjoyed the chef's presentation or preparation of the food. The Court is of the opinion, however, that the Senate Report views such instances as rare outliers.[14] *See* S. Rep. 93-690 at 42-3. Proceeding on that assumption, the Court restricts the nexus necessary for tip-pool inclusion to those employees who directly interact with customers or visibly engage in customer service. *See* C.F.R. § 531.52; S. Rep. 93-690 at 42-3; *Pedigo,* 722 F.Supp.2d at 730.

However, in rejecting Plaintiff's proposed nexus test (requiring direct interaction for tip-pool inclusion), the Court is not ruling that any visible employee may be included in a tip pool. *See Pedigo,* 722 F.Supp.2d at 730. Rather, the degree of visibility must pass a threshold that incentivizes the average customer to "customarily and regularly" tip "in recognition" of the service being

---

[14]*Supra* at 5-8.

performed to their benefit. *See* C.F.R. § 531.52; S. Rep. 93-690 at 42-3; *Pedigo,* 722 F.Supp.2d at 730. The visible employee, therefore, must interact with the customer, but that interaction does not have to be direct. *See Pedigo,* 722 F.Supp.2d at 730. This test is necessarily fact intensive because restaurants vary on the type of duties assigned to each of their employees. *Id* .

Moreover, a restaurant's job-title nomenclature is not dispositive, and the Senate Report's nomenclature is simply a list of general examples meant to illustrate the categorical distinction being made. *See Id.* at 729-30 (J. Nowlin) ("because the statute itself does not expressly enumerate the employees or occupations that are excluded from a tip pool under section 203(m), a determination of an employee's eligibility to participate in a tip pool requires an *ad hoc* analysis of an employee's duties, rather than a *per se* determination based upon an employee's job title"); *see also Bernal v. Vankar Enter., Inc.*, 579 F.Supp.2d 804, 810 n.44 (noting, in dicta, that the title of "cleaning crew" was indicative, but not dispositive) 804, 809 (W.D.Tex. Sept.30, 2008). The legal test, therefore, requires an assessment of the actual duties performed by the particular employee in question. *Id.* at 730.

**2. Industry Custom**

There is also good cause to defer to industry custom "given that the statute refers explicitly to employees that 'customarily and regularly' receive tips." *Roussell,* 2008 WL 2714079, at *11. Furthermore, the DOL Handbook mandates that employers should look to "the practices regarding their sharing of tips in the locality and type of establishment involved" when considering whether employees are tip-pool eligible. DOL Handbook § 30d04(d). "The Court believes that evidence [of] industry custom could, therefore, be considered together with direct customer interaction and customer service functions in determining whether employees are eligible to participate in a valid

9

tip pool." *Roussell,* 2008 WL 2714079, at *11.

Industry custom, however, like the Senate Report's nomenclature, is not dispositive. *See Id.*; *cf. Bernal,* 579 F.Supp.2d at 809 (industry custom cannot render FLSA provisions superfluous). Sushi chefs provide a good example of why industry custom is a factor. Although it is not an industry custom to tip chefs, sushi chefs are unique in that they often prepare their cuisine in front of guests and may interact directly with guests. *Ash v. Sambodromo, LLC,* 676 F. Supp. 2d 1360, 1371, (S.D. Fla. 2009). They may be called chefs, but their duties seem in line with the Senate Report's tip-pool category. *See Id.* Thus, there is a fact question as to whether they can be validly included in a tip pool, even though both industry custom and the Senate Report might seem to dictate otherwise. *Id.*

In this case, it is a fact question whether the official title of a Mi Tierra employee actually aligns with their duties. Simply calling an employee "service bartender" does not *per se* validate their inclusion in a tip pool, and the Court rejects Mi Tierra's arguments in this regard.[15] *See Pedigo,* 722 F.Supp.2d at 729-730. Moreover, the Court rejects Mi Tierra's argument that "[u]ndoubtedly, the restaurant industry has a clear understanding of what it means to be a service bartender."[16] In fact, based on the pleadings and precedent, the Court has much doubt that a clear and monolithic industry custom exists for service bartenders.[17] Also, the Court agrees with Plaintiff that Defendant's

---

[15]Def.'s Resp. at 9.

[16]Def.'s Resp. at 9.

[17]Defendant's evidence is not conclusive. (*Contra* Def.'s Resp. at 8-9). In fact, contrary to Mi Tierra's absolutist claim, their first source says that service bars are "sometimes ... a part of the dining room" and their second source says "there are many combinations of front and service bars." *Id.* Moreover, the *exact* sources were used in relevant part by the defendant in *Roussell*, and that court also held that these sources were not conclusive. *See Roussell,* 2008 WL 2714079, at *9.

heavy reliance on Mr. Packard's testimony is unwarranted.[18] Furthermore, the Court agrees with Judge Ellison that to accept a definition of "service bartender" as someone who performs preparatory tasks out of sight and lacks *any* customer interaction would risk obliterating the categorical distinction made in the Senate Report, and functionally write the tip-pool limitation out of the FLSA. *See Roussell,* 2008 WL 2714079, at *10 n. 43.

Instead, the Court looks to the less ambiguous and less contentious job title of busboy, which is the only occupation explicitly validated for tip-pool inclusion by an authoritative source. 29 C.F.R. § 531.54. A busboy performs an integral part of customer service without much direct interaction, but he does so in a manner visible to customers. *E.g. Lentz*, 491 F.Supp.2d at 670-71. Thus, for a service bartender to be validly included in a tip pool, she must meet this minimal threshold in a manner sufficient to incentivize customers to "customarily and regularly" tip "in recognition" of her services (though she need not receive the tips directly).[19]

**B. There is a Genuine Issue of Material Fact: Whether Mi Tierra's Service Bartenders are Validly Included in its Mandatory Tip Pool**

**1. Barbacks and Busboys**

The Court not only finds a question of fact as to whether a service bartender is substantially like a busboy, but also looks to Defendant's barback analogy.[20] While noting that a Department of

---

[18]*Compare* Def.'s Resp. at 7, *with* Pl's Rep. to Def.'s Resp. 3, May 26, 2011 (Docket Entry No. 45) (Packard's testimony was before the House General Subcommittee on Labor, *not* the Senate Committee on Labor and Public Welfare, which drafted the relevant report; it was also specific to the *hotel* industry).

[19]*Supra* 5-9.

[20]Def.'s Resp. at 14.

Labor (DOL) opinion letter is not authoritative, the Court still gives "substantial weight" to this "body of experienced and informed judgment," especially at the summary judgment level. *See Samson*, 242 F.3d at 638. Here, Defendant has directed the Court to a DOL opinion letter that considers a barback's tip-pool inclusion valid when:

> . . . the term "barback" refers to a bartender's assistant who learns the profession of bartending under the tutelage of a bartender and whose primary job is to support the bartender. . . [and he] is responsible for restocking the bar and ensuring the bar area remains clean and organized . . . works primarily in the bar area, *in front of and around customers, and* has the opportunity to *occasionally interact* with customers.

DOL Opinion Letter FLSA 2009-12 (Jan.15, 2009) (emphasis added); *See also Pedigo,* 722 F.Supp.2d at 732-33 (J. Nowlin) (deferring to this same opinion letter in relevant part).

That the DOL considers barbacks with these duties to be valid for tip-pool inclusion raises a genuine issue of material fact that precludes summary judgment. Much like the comparison between Mi Tierra's service bartenders and a busboy, there seems to be substantial similarity between Mi Tierra's service bartenders and the DOL's definition of a barback. All seem to have little direct customer interaction, but seem to perform important customer service functions in a manner that is visible to the customer–meeting the test of this District and its sister courts. *See e.g.Pedigo,* 722 F.Supp.2d 730 (internal citation omitted). Thus, if there is some unquestionable

factor that distinguishes Mi Tierra's service bartenders in a manner sufficient to invalidate their inclusion in a tip pool, it has not been presented to this court,[21] and a genuine issue of material fact remains.

**2. Hostesses and Salad Preparers**

A question of fact also remains regarding whether or not Mi Tierra service bartenders are more like hostesses or salad preparers. In *Kilgore*, the Sixth Circuit held that Outback properly included its hostesses in a mandatory tip pool. *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir.1998). That court reasoned that Outback hostesses sufficiently interacted with customers "in an industry (restaurant) where undesignated tips are common," making them "customarily and regularly" tipped. *Id.* Moreover, that court held that because Outback prohibited hostesses from receiving tips directly, there was some evidence that their occupation customarily received tips. *Id.* at 301-02.

After deciding *Kilgore*, the Sixth Circuit found in *Meyers* that waiters required to work a "salad shift" (solely preparing salads) were improperly included in a tip pool because they "abstained from any direct intercourse with diners, *worked entirely outside the view of restaurant patrons*, and solely performed duties traditionally classified as food preparation." Myers, 192 F.3d at 550 (emphasis added). The *Meyers* court relied on *Kilgore*, but held additionally that "the proper inclusion of the salad makers within a section 203(m) compulsory tip sharing fund is also contingent

---

[21]Plaintiff directs the Court to the DOL's Bureau of Labor Statistics to point out that "Dining Room and Cafeteria Attendants and Bartender Helpers" *may* "serve items such as water, condiments, and coffee to patrons" (Pl's Rep. to Def.'s Resp. 5). The Court finds this unhelpful: (1) the category is too general; (2) the listed customer interaction is very minimal and not routine; and (3) *Lentz*'s analysis is more compelling and specific on the duties of a busboy, while the DOL's description is more authoritative and specific on the duties of a barback.

13

upon the substantiated characterization of their employment as a 'service' vocation of a type which has traditionally received customer gratuities." *Myers*, 192 F.3d at 549 n.3.

However, as *Roussell* made evident, neither of these two cases are directly on point:

> In *Kilgore*, the Sixth Circuit thought it was abundantly clear that Outback hosts had sufficient interaction. The salad preparers in *Myers* were at the opposite end of the spectrum: the salad preparers had absolutely *no* interaction. Neither case addressed whether an employee who performed some "customer service functions," but had limited or no interaction with customers, would be eligible to participate in a mandatory tip-pool.

*Roussell*, 2008 WL 2714079, at *10. Indeed, not even the Kansas Supreme Court case, which upheld a lower court's finding that walled-off bartenders were "non-service bartenders," adequately addresses the issue here. *See Elkins v Showcase, Inc.*, 237 Kan. 720, 735 (Kan.1985). There, the court ruled on the basis that the bartenders "did not have any contact with customers," and avoided the question the Court is presented with today.[22] *Id.*

Here, the issue is whether bartenders, who have little customer contact, but who arguably perform customer service functions within the view of customers, should be considered "customarily and regularly" tipped. In resolving this issue, the Court bolsters this District's concurrence with the Southern District of Texas, that an employee "may be eligible to participate in a mandatory tip pool

---

[22]The Court agrees with Defendant that "non-service bartender" is not a widely used term. (Def.'s Resp. 15). However, what the Kansas Supreme Court termed the ineligible bartenders is of no moment. The important distinction made in that case was that the bartenders' "functions [were] performed *away* from the customers similar to that of a nontipped cook." *Elkins,* 237 Kan. at 735 (emphasis added). Moreover, to the extent that Plaintiff asks the Court to infer that some of the bartenders in that case were visible, the Court is not willing to do so: (1) this is *not* clear in the language of *Elkins*; (2) even if they were visible, the Court finds that there would still be a factual question regarding whether they performed a customer service for which patrons would tip in recognition; and (3) the Court rejects Plaintiff's request to read *Elkins* broadly enough to necessarily require direct customer interaction because this would thwart the Congressional intent demonstrated by the Senate Report. (*See supra* 5-9; *contra* Pl.'s Mot. Summ. J at 6 n.5).

even if they have only minimal customer interaction, as long as their primary duties entail important customer service functions." *Pedigo,* 722 F.Supp.2d 730 (J. Nowlin) (quoting *Roussell*, 2008 WL 2714079, at *10).

Because the Court concurs with our sister court and rejects Plaintiff's interpretation of the statute, a number of factual questions remain. Similar to *Kilgore*, where Outback prohibited its hostesses from taking tips directly, Mi Tierra prohibits its service bartenders from taking orders directly.[23] In *Kilgore* that prohibition was some evidence that hostesses were customarily tipped. Here, Mi Tierra's similar prohibition is some evidence that patrons feel inclined to interact with and tip service bartenders directly. Moreover, like the hostesses in *Kilgore*, Mi Tierra's service bartenders may provide an enhanced dining experience by adding to the ambiance of the dining room.

Unlike *Meyers*, however, where salad preparers were *not visible* to customers, Mi Tierra's service bartenders are stationed in the dining rooms.[24] This is some evidence that Mi Tierra patrons may tip *in recognition* of the customer service being provided. Furthermore, unlike making a salad, which the *Meyers* court considered "traditional" food preparation, bartending may be a more traditional customer service, especially when performed in a manner visible to patrons.

### 3. Preparation Cooks, Dishwashers, and QAs

Plaintiff argues that "pouring a beer or mixing and garnishing a cocktail are more akin to rolling an enchilada and garnishing a plate than to greeting, seating, serving and entertaining

---

[23]Pl.'s Mot. Summ. J at 6.

[24]Cortez Depo. at 14-15; Def.'s Resp. at 11 n.7.

customers."[25] This may work as a jury argument, but it fails at the level of summary judgment.

First, looking only at the continuum Plaintiff has given, it is still possible that a service bartender mixing a margarita in view of the dining room adds ambiance to the dining experience and amounts to "entertaining customers." Enchilada rolling, on the other hand, not only takes place out of sight, but a fact finder may also consider it less entertaining, and thus more akin to traditional food preparation than customer service. *See Roussell*, 2008 WL 2714079, at * 11; *See also Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, (1986) (how employees spend their time is a question of fact).

Second, Plaintiff's analysis overlooks the CFR's explicit validation of busboys for tip-pool inclusion.[26] 29 C.F.R. § 531.54. The Court is not willing to do the same. The Defendant's use of *Lentz* illustrates why this is problematic for Plaintiff and her interpretation of the statute.[27] Thus, if there is some unquestionable factor that distinguishes Mi Tierra's service bartenders from a busboy's tip-pool inclusion, it has not been presented to this court and a clear factual dispute remains.

Plaintiff also argues that it is not industry custom to tip service bartenders.[28] However, Plaintiff's source on this matter is a DOL guide for the *hotel* industry.[29] This evidence is actually antithetical to Platintiff's summary judgment motion because it raises a question of fact regarding whether the same standard applies to the restaurant industry. More specifically, it raises the question

---

[25]Pl.'s Mot. Summ. J. at 14-15.

[26]*Supra* at n.21.

[27]Def.'s Resp. at 13 (*supra* 7-8, 12).

[28]*See* Pl.'s Mot. Summ. J. at 18.

[29]*Id.*

16

of whether the same standard applies to restaurants like Mi Tierra, where the service bartenders are visible to patrons–which may not be the case for the hotel industry.[30]

**C. The Court Disagrees With Defendant's Tautological Interpretation**

Mi Tierra argues that because its service bartenders "customarily and regularly receive tips from the tip pool the servers contribute to each week" they are "tipped employees" and thereby validly included in a tip pool.[31] To support this proposition, Mi Tierra directs the Court to the CFR: "[w]here employees practice tip splitting, as where waiters give a portion of their tips to the busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them, in applying the provisions of section 3(m) and 3(t)." 29 C.F.R. § 531.54.

However, the Court agrees with Plaintiff that Mi Tierra's tautological interpretation would grant employers fiat power to include anyone in the tip pool–simply by doing so regularly.[32] *See Roussell,* 2008 WL 2714079, at *9 (citing *e.g. Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 n. 22 (S.D.N.Y.2006)). The Court also agrees with Plaintiff that Mi Tierra ignores the necessary subsection 203(t) tip-pool limitation in the FLSA.[33] *See e.g. Kilgore,* 160 F.3d at 301 ("the

---

[30]Plaintiff points out that Defendant's source is dated, but *both sources* are not only *dated*, but also specific to the *hotel industry*. *See* (Pl.'s Mot. Summ. J. at 18). A more recent and more on-point DOL authority is the 2010-2011 OCCUPATIONAL OUTLOOK HANDBOOK. This authority's "Food and Beverage Serving and Related Workers" section is contextual to "workers [who] are the front line of customer service in full-service restaurants, casual dining eateries, and other food service establishments." *Id.* Furthermore, it recognizes that in *these industries* "[s]ervice bartenders often are paid higher hourly wages to offset their lower tip earnings." *Id.*

[31] Def.'s Resp. at 17.

[32]*See* Pl.'s Rep. to Def.'s Resp. at 5.

[33]Pl.'s Rep. to Def.'s Resp. at 5; *contra* Def.'s Resp. at 11 n.8.

17

circularity is limited by the subsection 203(t) requirement"). Indeed, when Brinker (Chili's) attempted to construct the statute in such a way, the *Roussell* court rejected it and said:

> . . . such an argument would lack any limiting principle and would appear inconsistent with Congressional intent. Such a reading would allow an employer to include virtually any employee in a tip pool simply by allowing them to regularly share in tips, in apparent disregard of the fact that Congress and the Department of Labor have explicitly listed certain types of employees that may *not* participate in a tip pool.

*Id.* (also concurring with *Kilgore* in relevant part).

Thus, the Court concurs with our sister courts that Section 203(t) serves to limit tip-pool eligibility to those employees who are "engaged in an occupation in which [they] customarily and regularly" receive tips, as defined by the Senate Report and the DOL Handbook. § 203(m); *e.g. Kilgore*, 160 F.3d 294, 301. Mi Tierra cannot unilaterally make it customary to tip. Whether a particular occupation is customarily tipped must be determined *ad hoc* because custom is a nexus between the particular service industry at hand and its tipping patrons.[34]

**D. The Court Denies Plaintiff's Hearsay Objection as Moot**

In Plaintiff's reply to Defendant's response, Plaintiff objected to Defendant's expert testimony[35] on the grounds that it was inadmissable hearsay.[36] However, the Court has not relied on this testimony. The Court therefore denies Plaintiff's objection to these reports as moot.

---

[34]*Supra* at 9-10.

[35]Expert Report of Mr. Chris Tripoli, March 31, 2011 (Def.'s Resp., at Ex. D); Affidavit of Stephen Barth, April 1, 2011 (Def.'s Resp., at Ex. E); Expert Opinion of Joe Abuso, Def.'s Resp., March 31, 2011 (Def.'s Resp., at Ex. F); Expert Witness Report of Thomas A. Potter, April 1, 2011 (Def.'s Resp., at Ex. G).

[36]Pl's Rep. to Def.'s Resp. at 2 n.2.

## IV. Conclusion

The Court finds that Plaintiff has not met her summary judgment burden showing that no genuine issues of material fact exist. Specifically, the Court finds that a question of fact remains regarding whether or not Mi Tierra's service bartenders should be considered "customarily and regularly" tipped because Mi Tierra's concession (that their service bartender's lack direct customer interaction) is not *per se* dispositive. Accordingly, Plaintiff's motion for summary judgment (docket no. 40) is DENIED. Plaintiff's objection to the expert reports is also DENIED; the Court has not relied on these reports, so the issue is moot.

It is so ORDERED.

SIGNED this 29th day of July, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE