IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VIRGINIA BARRERA | § | |
| | § | |
| vs. | § | CIVIL ACTION |
| | § | NO. 5:10-CV-665 XR |
| | § | |
| MTC, INC. d/b/a MI TIERRA CAFÉ | § | |
| AND BAKERY d/b/a LA MARGARITA | § | |
| RESTAURANT & OYSTER BAR, and | § | |
| d/b/a RESTAURANTE PICO DE GALLO | § | |

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING MEAL DEDUCTIONS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

DEFENDANT MTC, INC. (hereinafter collectively referred to as "Defendant" and/or "MTC"), Defendant in the above-styled and numbered cause, and files, pursuant to FED. R. CIV. P. 56, this its Motion for Partial Summary Judgment Regarding Meal Deductions (the "Motion") and moves this Court to grant judgment in its favor, for the reason there is no genuine issue of material fact, and Defendant therefore is entitled to judgment as a matter of law. In support thereof, Defendant respectfully shows as follows:

## I.
## INTRODUCTION

Mi Tierra Café and Bakery ("Mi Tierra") is a restaurant owned and operated by La Familia Cortez, dating back to 1941, and is located in the Market Square (El Mercado). It has grown from a three-table café to being able to seat over 500 patrons. La Familia Cortez is proud of the fact that many of its employees have worked for MTC for more than thirty (30) years, including nine (9) employees who have worked for MTC between 31 and 40 years. Mi Tierra's

mission is to provide the highest quality food, authentic culture, sincere hospitality and community patronage.

Among the various allegations made, Plaintiff Virginia Barrera ("Plaintiff") and the opt-in Plaintiffs argue that Mi Tierra has violated the Fair Labor Standards Act ("FLSA" or the "Act") because it takes a deduction from all servers' weekly compensation as payment for the cost of meals, regardless of whether the employee chooses to eat such meal. (Pl.'s First Am. Compl. at 3 (Para. 14)) (Dkt. No. 23). As is clear from the evidence and authority presented herein, such deductions are permissible and do not constitute a violation of the FLSA. As a result, Mi Tierra is entitled to summary judgment on this claim by Plaintiffs.

## II.
## STATEMENT OF FACTS

Plaintiffs are employed by Mi Tierra as servers. Plaintiffs are paid $2.13 per hour plus tips, as permitted by the FLSA. Plaintiffs are paid weekly, and their paystub for each week includes a deduction that totals $3.02 per day that each Plaintiff works four (4) or more hours per shift. (*See* Depo. of George P. Cortez, true and correct excerpted portions of which are attached hereto and incorporated by reference as Exhibit A, at 56-59; *see also* Aff. of George P. Cortez, attached hereto and incorporated herein by reference as Exhibit B, at 1). This deduction is mandatory and is taken by Mi Tierra as payment for the cost of an average meal, regardless of whether the employee actually eats a meal, and beverages made available to employees throughout their shifts. (Ex. A at 62-63; Ex. B at 2). The deduction taken by Mi Tierra does not include any profit to Mi Tierra. (Ex. B at 2). If an employee notifies Mi Tierra that they have not eaten a meal and requests that they not be charged, Mi Tierra will not take the deduction for the meal. (Ex. A at 57; Ex. B at 2).

3513077.3

## III.
## STANDARD AND BURDEN OF PROOF

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) ("The existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 902 (5th Cir. 2000). The court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford,* 234 F.3d at 902. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000) (quoting *Anderson,* 477 U.S. at 250-51).

3513077.3

IV.

**THE FLSA PERMITS MANDATORY MEAL DEDUCTIONS**

A.   **The FLSA's Minimum Wage Provisions**.

Congress enacted the FLSA, 29 U.S.C. §§ 201-219, in 1938 in order to establish a federal minimum wage and require employers to pay overtime to certain eligible employees.  In 1966, Congress amended Subsection 203(m) to allow employers to claim a "credit" equal to fifty percent (50%) of the minimum wage amount due to "tipped employees."  Sept. 23, 1966 Pub. L. 89-601, Title I, § 101(a), 80 Stat. 830.  The same law also added Subsection 203(t) to define a "tipped employee." *Id.*

Food servers must receive at least the applicable minimum wage.  29 U.S.C. § 206(a)(1). Because food servers are "tipped employees," however, their tips may be combined with the hourly wage paid directly by the employer, allowing restaurants to pay a "sub-minimum wage." 29 U.S.C. §§ 230(m), (t).   The difference between the minimum wage and the amount an employee must be paid directly by the employer is commonly referred to as the "tip credit." *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59.

In addition to allowing Mi Tierra to take a tip credit for Plaintiffs, Section 3(m) of the FLSA also defines "wage" to include "the reasonable cost, as determined by the [Department of Labor ("DOL")] to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m).  The DOL's regulations interpreting the FLSA expressly provide that the term "other facilities" includes meals furnished by restaurants to their employees. *See* 29 C.F.R. § 531.32(a).  Where the cost of "other facilities" is found to be primarily for the benefit or convenience of the employer, the DOL takes the position that such costs are not "reasonable." *See id.* § 531.3(d)(1).  The regulations state, however, that "meals are

4

3513077.3

always regarded as primarily for the benefit and convenience of the employee." *See id.* § 531.32(c) (emphasis added); *see also* Field Operations Handbook § 30c03(a)(1). In providing guidance as to the calculation of such reasonable cost of a meal, the DOL takes the position that only actual cost – not profit – can be included in the calculation. *See id.* § 30c06(a)(1); 29 C.F.R. § 531.33(b). Finally, and especially relevant to the case at hand, the DOL's regulations provide that these determinations regarding the "reasonable cost" of "furnishing" "other facilities" "apply to all facilities furnished by the employer as compensation to the employee, regardless of whether the employer calculates charges for such facilities as additions to or deductions from wages." *Id.* § 531.29.

In interpreting Section 3(m) of the FLSA, the DOL has issued regulations indicating that meals must be accepted voluntarily by the affected employee; specifically, the DOL's regulations provide that "[n]ot only must the employee receive the benefits of the facility for which he is charged, but it is essential that his acceptance of the facility be voluntary and uncoerced." 29 C.F.R. § 531.30; *see also* Field Operations Handbook § 30c01(c). When the DOL tried to enforce such a requirement, however, several courts specifically rejected this requirement that a meal be voluntarily accepted in order for the credit/deduction permitted by Section 3(m) to apply. *See, e.g., Donovan v. Miller Properties, Inc.* 711 F.2d 49 (5th Cir. 1983) (rejecting § 531.30's requirement that the acceptance be voluntary); *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (6th Cir. 1999) (holding that "29 C.F.R. § 531.30 is no longer a viable regulation" and that "[n]othing in § 203(m) indicates that employers must give their employees a choice of whether to accept meals."); *Davis Bros., Inc. v. Donovan*, 700 F.2d 1368, 1370-72 (11th Cir. 1983) (rejecting DOL's requirement in 29 C.F.R. § 531.30 that meals be voluntarily accepted based upon the "plain language of section 3(m) [that] focuses on the actions of the

5

employer, not of his employees."). Thereafter, and in apparent recognition of the courts'
holdings that this particular regulation was invalid, the DOL acknowledged that it had abandoned
this regulation's requirement that such agreements be voluntary. *See, e.g.,* Field Operations
Handbook § 30c09(b); Wage & Hour Opinion Letter, 1997 DOLWH LEXIS 21 (Apr. 29, 1997).[1]

Here, Plaintiffs have challenged the meal deduction taken by Mi Tierra based on the
apparent, but incorrect, belief that such deduction is improper if the meal is not eaten. (*See* Pl.'s
First Am. Compl. at 3 (Para. 14; "The meal deduction is often taken even when the employee
does not eat the Defendant's food.") (Dkt. No. 23)). As several courts have held, however, the
issue of whether employees consent to the deduction or even eat the meal is, essentially,
irrelevant; the FLSA specifically allows employers a deduction/credit for the reasonable cost of a
meal offered to employees. *See, e.g., Miller Properties, Inc.* 711 F.2d at 50 (affirming District
Court's grant of summary judgment for employer "on the basis of *Davis Bros, Inc. v. Donovan*"),
*aff'g Donovan v. Miller Properties, Inc.* 547 F. Supp. 785, 786 (M.D. La. 1982) (noting that
"neither prospective nor current employees are offered the choice of receiving their wages
entirely in cash" in granting summary judgment to employer based on holding that mandatory
meal credits to minimum wage were permissible); *Collis Foods, Inc.*, 176 F.3d at 914-15 (noting
that "Collis Foods deducts a meal credit from each employee's cash wages, based upon the
number of hours that the employee works in a given day" and that "not all choose to accept
Waffle House meals" in holding that such mandatory meal deductions from minimum wage were

---

[1] That the DOL's enforcement policy in this regard remains unchanged was also acknowledged in April of this year.
In discussing proposed amendments to 29 C.F.R. § 531.30 "to incorporate the Department's longstanding
enforcement position regarding the acceptance of meals furnished as a credit towards the minimum wage," the DOL
noted in the "Summary of Comments" to its final rule issued April 5, 2011, that "under the agency's current
enforcement policy articulated in the [Field Operations Handbook], an employer may require an employee to accept
a meal provided by the employer as a condition of employment, and may take credit for no more than the actual cost
of that meal even if the employee's acceptance is not voluntary." Updating Regulations Issued Under the Fair Labor
Standards Act, 76 Fed. Reg. 18,832, 18,845 (2011).

3513077.3

permissible); *Davis Bros., Inc.*, 700 F.2d at 1369 (noting that "the appellant restaurant and motel chain claims credit for meals furnished to its employees" and that "the employees must take the meals" in holding that the mandatory meal credits to minimum wage were permissible). The only issue, then, that could prevent summary judgment for Mi Tierra on the facts presented is the amount of the deduction, which the DOL and courts agree must be reasonable.

Relying on 29 C.F.R. § 516.27(a)(2)'s statement that "[n]o particular degree of itemization is prescribed" and on Section 3(m)'s provision that reasonableness may be determined based upon the "average cost to the employer . . . or average value to groups of employees . . . in lieu of actual measure of cost," 29 U.S.C. § 203(m), at least two courts have found that employers may use a "standardized substantiated estimated average cost, rather than the actual cost." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 555 (6th Cir. 1999); *Collis Foods*, 176 F.3d at 919-20. More specifically, and noting that "Collis Foods showed the meal-credit deduction on the weekly paycheck of each of its employees" and that Collis Foods "also maintained records of the cost of all of the food it purchased, whether such food was for consumption by employees or by customers," *id.* at 919, the Court in *Collis Foods* held that the employer had met its burden of showing that the mandatory meal deductions represented the reasonable cost of the meals. In so holding, the court also noted that "[a]lthough employers are not required to account for each and every food item offered to or accepted by their employees, the burden of proving that a deduction from wages represents the reasonable cost of the meals furnished is on the employer." *Id.* at 920 (*quoting Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir. 1982)).

In an attempt to provide guidance as to how the reasonable cost of a meal should be calculated, the DOL has indicated that such costs includes "only the actual cost to the employer

of the food, its preparation, and related supplies." Field Operations Handbook § 30c06(a)(1). "Salary or wage costs, as distinguished from material or supply costs, may be claimed only to the extent that such salary or wage costs are shown to be directly attributable to the cost of providing meals to employees." *Id.* Additionally, Costs which a food service employer incurs regardless of whether the employees were furnished meals may not be included in determining the 'reasonable cost.' In a food service establishment, items such as employee insurance, payroll taxes, menus, decorations, other operating supplies, laundry, telephone, maintenance services, advertising and promotion, building and equipment rental, licenses and taxes, insurance and depreciation, franchise cost, and general administrative costs are a part of the overall cost of the operation of the employer's business establishment which may not be charged to the reasonable cost of employees' meals." *Id.* at § 30c06(a)(2). *See also* Wage & Hour Opinion Letter, 1997 DOLWH LEXIS 41 (Sept. 8, 1997); Wage & Hour Opinion Letter, 1997 DOLWH LEXIS 39 (Aug. 29, 1997).

As briefly discussed by Mr. Cortez in his deposition and explained more thoroughly by Mr. Cortez in his affidavit, Plaintiffs are paid weekly, and their paystub for each week includes a total deduction of $2.79 per day that each Plaintiff works four (4) or more hours per shift; with the addition of the required sales tax, such per-shift deduction totals $3.02. (*See* Ex. A at 56-59; *see also* Ex. B, at 1). This deduction is mandatory and is taken by Mi Tierra as payment for the cost of an average meal and beverage, regardless of whether the employee actually eats a meal or drinks beverages made available to him. (Ex. A at 62-63; Ex. B at 2).

Utilizing data recorded and maintained by Mi Tierra in the course of its regularly conducted business activity, Mi Tierra's Chief Financial Officer, Mr. Joe M. Guerra, prepares various financial reports. (*See* Aff. of Joe M. Guerra, attached hereto and incorporated herein by

reference, as Ex. C, at 1-2).[2]   Mr. Guerra is a Certified Public Accountant and prepares such

financial records in accordance with the applicable standard accounting principles and provisions

of the Internal Revenue Code.  *See id* at 1.  Based upon Mi Tierra's data reflecting total sales

(excluding alcohol and merchandise),[3] food costs,[4] labor costs for "Back of the House"

employees[5] and guest counts, Mr. Guerra is able to calculate that the average cost of producing a

meal (including beverages) for an employee totaled $3.46, $3.48, $3.56 and $3.53, respectively,

for the years 2007-2010.  *See id.* at 2-4; *see also* Ex. C-1 (Excel spreadsheet summarizing cost

and sales data and related calculations identified in Mr. Guerra's affidavit).  As suggested by the

DOL's guidance regarding costs that should not be included in a calculation of "reasonable cost,"

Mr. Guerra did not include additional costs, such as employee insurance, payroll taxes, menus,

---

[2] Because the data presented within Mr. Guerra's affidavit (*see* Ex. C) and attached Excel spreadsheet (*see* Ex. C-1) with respect to sales, food costs, labor costs, guest counts and related calculations is included within voluminous writings that cannot conveniently be examined in court, such data is presented herein and in Mr. Guerra's affidavit in the form of a summary, as permitted by FED. R. EVID. 1006.  Duplicates of the underlying records are available for examination or copying, or both, by Plaintiffs at a reasonable time and place, and Defendant will comply with any order of the Court requiring that such underlying records be produced for examination by the Court.  As the Chief Financial Officer for Defendant, Mr. Guerra also serves as the custodian of records for the various financial reports summarized herein, and his affidavit serves to authenticate such records pursuant to FED. R. EVID. 803(6). Concurrent with the filing of this Motion, Defendant has also filed a Motion to File Under Seal, seeking to protect the confidential business information included within Mr. Guerra's affidavit and any such underlying business records that Plaintiffs or this Court may seek to review.

[3] Mr. Guerra utilized sales totals exclusive of alcohol and merchandise in reporting the data included herein because the meal deduction taken by Mi Tierra for Plaintiffs does not include alcoholic beverages (which Plaintiffs cannot consume while on duty) or the purchase of merchandise. (*See* Ex. C at 2).

[4] For the same rationale as used in providing sales totals, *see supra* at n.2, Mr. Guerra calculated the applicable ratios without including costs associated with alcoholic beverages and merchandise. (*See* Ex. C at 2).  Additionally, Mr. Guerra calculated labor costs separately, and such costs are not included in calculating the cost of goods for food sold by Mi Tierra. *See id.*

[5] In calculating the total annual labor costs of those "Back of the House" employees involved in the production of food and washing of the associated dishes, Mr. Guerra utilized only the actual labor costs (compensation paid, without inclusion of benefits) paid to the cooks (referenced within Mi Tierra's Labor Distribution report as "Production"), short-order cooks (referenced within Mi Tierra's Labor Distribution report as "Line Servers"), tortilla makers, dishwashers and kitchen labor (referenced within Mi Tierra's Labor Distribution report as "Shift III"). (*See* Ex. C at 2-3).  Because Plaintiffs who eat a meal are responsible for serving their own meal to themselves and returning associated dishes and glasses to the kitchen, Mr. Guerra did not include labor costs from any other department within the restaurant, *e.g.*, servers, assistant servers. *See id.* at 3.  Likewise, Mr. Guerra did not include in his calculation of labor costs any of the costs associated with restaurant management within the kitchen, *see id.* at 3, although such costs could be said to be properly included within the calculation of labor costs for food production, given that kitchen management supervise the production of all food produced, regardless of whether such food is for a customer or employee. *Id.*

decorations, other operating supplies, laundry, telephone, maintenance services, advertising and promotion, building and equipment rental, licenses and taxes, insurance and depreciation, franchise cost, and general administrative costs. (*See* Ex. C at 4).

As the evidence presented by Mi Tierra clearly demonstrates, the average costs of producing a meal (which includes beverages) to an employee for the years 2007-2010 totaled $3.46, $3.48, $3.56 and $3.53, respectively.  In each of those years, Plaintiffs were only charged $2.79, which resulted in a total deduction of $3.02 following inclusion of the required sales tax. Based upon the records of Mi Tierra, it is clear that this deduction is actually less than the cost to produce an average meal (including beverage) to an employee.   *Id.* at 3; Ex. B at 1; Ex. C at 4. In light of such evidence, and controlling law permitting Mi Tierra to take a deduction/credit for the reasonable cost of a meal made available to employees, it must be found that Mi Tierra's deduction from Plaintiffs' wages was both reasonable and permissible under the FLSA. Because Plaintiffs have never been charged more than the reasonable cost of making a meal available to them, Mi Tierra is entitled to summary judgment on their claim that the mandatory meal deduction violated the FLSA, and such claim should be dismissed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that the Court grant this Motion, dismiss Plaintiffs' claims that the tip pool is invalid based on the participants in their entirety, and grant such other and further relief to which Defendant is justly entitled.

3513077.3

Respectfully submitted,

COX SMITH MATTHEWS INCORPORATED

112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone:   (210) 554-5500
Facsimile:   (210) 226-8395


By:   _/s/ Ramon D. Bissmeyer_____
     **Ramon D. Bissmeyer**
     State Bar No. 00787088
     rbissmeyer@coxsmith.com
     **Cora C. McGowan**
     State Bar No. 24060258
     cmcgowan@coxsmith.com

**DAVIS, CEDILLO & MENDOZA, INC.**
McCombs Plaza, Suite 500
755 East Mulberry Avenue
San Antonio, Texas 78212
Telephone: (210) 822-6666
Facsimile: (210) 822-1151
**Ricardo G. Cedillo**
State Bar No. 04043600
rcedillo@lawdcm.com
**Mark W. Kiehne**
State Bar No. 24032627
mkiehne@lawdcm.com

**ATTORNEYS FOR DEFENDANT,
MTC, INC. d/b/a MI TIERRA
CAFÉ AND BAKERY**

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2011, I electronically filed true and correct copies of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing, and additionally served via United States certified mail, return receipt requested, to the following:

**VIA CMRRR NO. 7160-3901-9849-2921-2885**

Jeremi K. Young
**THE YOUNG LAW FIRM, PC**
112 W. 8th Ave., Suite 900-D
Amarillo, Texas 79101
jyoung@youngfirm.com


*/s/ Ramon D. Bissmeyer*
Ramon D. Bissmeyer
Cora C. McGowan
Counsel for Defendant

12

3513077.3