**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VIRGINIA BARRERA** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION** |
| | § | **NO. 5:10-CV-665 XR** |
| | § | |
| **MTC, INC. d/b/a MI TIERRA CAFÉ** | § | |
| **AND BAKERY d/b/a LA MARGARITA** | § | |
| **RESTAURANT & OYSTER BAR, and** | § | |
| **d/b/a RESTAURANTE PICO DE GALLO** | § | |

**DEFENDANT'S REPLY TO
PLAINTIFFS' RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES DEFENDANT MTC, INC. (hereinafter referred to as "Defendant" and/or "MTC"), Defendant in the above-styled and numbered cause, filing this its Reply to Plaintiffs' Response to Motion for Partial Summary Judgment (the "Reply") and, in support thereof, Defendant respectfully shows as follows:

**I.
MI TIERRA DID NOT DISTRIBUTE TIP POOL FUNDS TO EMPLOYEES OTHER
THAN BUSSERS, BAKERY CLERKS, HOSTS AND SERVICE BARTENDERS**

Plaintiffs claim that MTC occasionally shares tips with cooks and/or kitchen workers at Mi Tierra Café and Bakery ("Mi Tierra") and by doing so violates the Fair Labor Standards Act ("FLSA"). (Pl.'s First Am. Comp. ¶12) (Dkt. No. 23). Because MTC does not distribute tip pool funds to anyone other than service bartenders, hosts/hostesses, bakery counter clerks or assistant servers/bussers, it moved for summary judgment on this issue. (Def.'s Mot. at 18-19). Plaintiffs failed to respond to this argument in their Response to Defendant's Motion for Summary Judgment ("Response"). (*See* Pls.' Resp. at 1-2 and 4-12 (Dkt. No. 61)). Therefore, Plaintiffs

have failed to raise a genuine issue of material fact regarding the distribution of tip pool funds at Mi Tierra to employees other than service bartenders, hosts, bakery counter clerks or assistant servers/bussers, and MTC is entitled to summary judgment on this issue.

**II.**
**MI TIERRA'S BUSSERS, BAKERY CLERKS AND HOSTS/HOSTESSES**
**ARE PROPERLY INCLUDED IN THE TIP POOL**

MTC moved for summary judgment on the issue of whether bussers/assistant servers, bakery counter clerks and hosts/hostesses were properly included in the tip pool. (Def.'s Mot. at 20-22). Again, Plaintiffs failed to respond to these arguments and, thus, failed to raise a genuine issue of material fact. (Pls.' Resp. at 1-2 and 4-12). Instead, Plaintiffs' sole focus as to why Mi Tierra's tip pool is invalid relates to the inclusion of the service bartenders in the tip pool. (*See id.*). Because Plaintiffs have failed to raise a genuine issue of material fact as to the inclusion of bussers/assistant servers, bakery clerks and hosts/hostesses in the tip pool, MTC is entitled to summary judgment as to Plaintiffs' claims that inclusion of such positions in MTC's tip pool violates the FLSA.

**III.**
**MI TIERRA'S  SERVICE BARTENDERS CUSTOMARILY &**
**REGULARLY RECEIVE TIPS**

**A.**      ***Roussell* Does Not Change Prevailing Law**

Plaintiffs begin their Response by stating that the Fifth Circuit's recent decision in *Roussell v. Brinker Int'l, Inc.*, No. 09-20561, No. 10-20614, 2011 U.S. App. LEXIS 19027 (5th Cir. Sept. 14, 2011) "cautions against granting summary judgment in favor of Mi Tierra." (Pl.'s Resp. at 4). Affirming a jury verdict in favor of the plaintiffs, the Fifth Circuit began by recognizing that it would review *de novo* the legal question of whether "employees who perform important customer service functions are eligible to share tips regardless of whether they have

2

direct customer interaction or not." *Roussell*, 2011 U.S. App. LEXIS 19027, at *19.  Answering this question, the Fifth Circuit found that the district court's finding of customer interaction as "highly relevant" was reasonable, *id.*, but it also recognized that the district court "neither made direct interaction a prerequisite . . . nor did it reject Brinker's suggestion that the performance of 'important customer service functions' also is relevant to tip-eligibility." *Id.*

To suggest, as Plaintiffs do, that summary judgment is inappropriate because a jury is entitled to determine whether interaction with customers is required for deciding whether one customarily and regularly receives tips (*see* Pl.'s Resp. at 4) is to misread *Roussell*, which held, simply, that there was sufficient evidence upon which that jury could find, in responding to two interrogatories, "that Brinker had not proven' that QAs/Expos work in positions or an occupation that customarily and regularly receive tips.'" *Id.* at *4.  Clearly, by recognizing that the district court could find customer action highly relevant, while at the same time recognizing that the district court did not make such interaction a prerequisite,[1] the Fifth Circuit did not preclude summary judgment based on the evidence presented in MTC's Motion for Partial Summary Judgment nor modify any of the legal authorities cited therein.  While interesting, the Fifth Circuit's decision in *Roussell* is not particularly instructive and does not require that summary judgment be denied.

**B.    Limited and/or Non-Existent Customer Interaction Does Not Preclude Summary Judgment**

Based upon the Fifth Circuit's simple finding that the district court in *Roussell* reasonably found customer interaction to be highly relevant (while ignoring the Fifth Circuit's related statement that the district court had not required such customer interaction), Plaintiffs contend

---

[1] This Court has similarly rejected any position that customer interaction is required in order for one to be found to customarily and regularly receive tips.  (*See* Order Denying Pls.' Mot. Part. Summ. J. at 7 ("Put simply, direct interaction is not strictly necessary; visible customer service may also be sufficient.") (Dkt. No. 49)).

that a genuine issue of material fact exists so as to prevent summary judgment because "a jury could reasonably conclude that Mi Tierra's bartenders are not tip-pool eligible regardless of whether they are visible to some customers." (Pl.'s Resp. at 5-6). As stated previously, *Roussell* cannot be said to stand for the proposition that a jury is required to determine tip-pool eligibility based upon customer interaction. Even if the Court assumes no customer interaction by MTC's service bartenders (as it, essentially, did when denying Plaintiffs' Motion for Summary Judgment), the Fifth Circuit's recognition that the district court in that case had not required such interaction makes clear both that such interaction is not, in fact, required and that a jury is not required (and, thus, summary judgment is not precluded) to make the decision as to whether customer interaction was sufficient for purposes of then finding that a given position customarily and regularly receives tips.

**C.    Visibility of Service Bartenders from All Seats to All Customers is Not Required.**

Citing this Court's Order denying their Motion for Summary Judgment, Plaintiffs now contend that MTC is not entitled to summary judgment because it has not proven that service bartenders visibly engage in customer service. (Pl.'s Resp. at 6). Plaintiffs then go on to argue that service bartenders are not visible to all customers from all tables within the restaurant. (*Id.* at 8-9). Of course, this Court did not require that all customers at all times while seated at their tables be able to see an employee in order for such individual to be properly included within a tip pool, and this Court further indicated that it was "not ruling that any visible employee may be included in a tip pool." (Order Denying Pls.' Mot. Part. Summ. J. at 8 (Dkt. No. 49)). In comparing MTC's service bartenders to a Department of Labor ("DoL") opinion letter regarding barbacks, this Court referenced the fact that both "seem to perform important customer service functions in a manner that is visible to the customer. . . ." *Id.* at 12. This reference, when read in

4

conjunction with the remainder of the Court's Order denying Plaintiffs' Motion for Partial Summary Judgment, indicates that a determination as to whether one who does not have direct customer interaction customarily and regularly receives tips relates to the extent to which his/her visibility to customers "incentivizes the average customer to 'customarily and regularly' tip 'in recognition' of the service being performed to their benefit." *Id.* at 8-9.

Simply by including testimony by declaration that some customers may not[2] see the service bars and/or bartenders from their tables,[3] Plaintiffs cannot be said to have precluded summary judgment for MTC on this issue. Applying Plaintiffs' logic, a service bartender could, presumably, be found to have incentivized a customer to tip in recognition for service only as to those customers facing a service bar during their dining experience, as those seated with their backs to the bar would have no basis to tip for the services of the bartenders. There is no legal requirement that an individual cannot be said to customarily and regularly receive tips unless every customer can always see such employee in performing his/her duties. Such apparent position by Plaintiffs (if carried to its logical conclusion) would preclude any finding that an employee without direct customer contact could customarily and regularly receives tips if there were but a single visually impaired customer, as such customer could not actually see the employee providing a service. Clearly, even taking as true Plaintiffs' contention that not all customers can see a service bar from their seats, it cannot be found that such evidence precludes summary judgment.

---

[2] Defendant has objected to the speculative nature of such testimony.

[3] Plaintiffs fail to address the obvious fact that customers can see the service bars and bartenders at any point while in the restaurant -- while being led to or otherwise seated in a dining room that adjoins one of the dining rooms with a service bar, while visiting the restroom or while wandering the restaurant to enjoy its festive decorations. (*See* Decl. of Pete Cortez, attached hereto and incorporated herein by reference as Ex. A, at 1-2). Although Defendant denies Plaintiffs' apparent argument that each customer must actually see a service bartender in order to demonstrate that such bartenders customarily and regularly receive tips, the fact remains that customers have many opportunities while in the restaurant to see the service bars and bartenders.

**D.    The Service of Mi Tierra's Service Bartenders to Customers Affect Tips**

Plaintiffs also take the position that service bartenders "rarely affect tips."[4]  (Pls.' Resp. at 7).  By referencing a customer's incentive to tip for the service provided, this Court did not find, as Plaintiffs suggest (*see* Pls.' Resp. at 7), that such incentive can only be manifested through an <u>increase</u> in the tip left by the customer.  In fact, that four (4) of those currently participating in this lawsuit chose to submit declarations opining that service bartenders can only negatively impact their tips cannot be said to prove that customers do not realize that they are tipping based upon the service provided to the customer by the service bartender.  Such "evidence" actually suggests exactly the opposite.  By stating that customers may withhold a tip based upon poor service (which correlation no server would likely dispute), Plaintiffs admit the correlation between their tips and the service provided by service bartenders; that such correlation, in their opinion, only negatively impacts tips does not disprove such correlation.  This is further demonstrated by Plaintiffs' declarations regarding the requests of some customers to be seated away from the bars.  (*See* Pls.' Resp. at 7-8).  That not each and every customer's dining experience is made more pleasurable by a service bar is irrelevant, and the fact that customers ask to be moved "because [of] the activities of the bartenders (*e.g.* running drink blenders, scooping ice and clinking glasses)," *id.* at 7, makes clear the customers' recognition of the services being provided by the bartenders.  Additionally, Plaintiffs' speculation that long lines at the service bars (*see* Barrera Decl. at 1 (¶4)); Garces Decl. at 1 (¶4)) may also negatively impact their tips[5] only further demonstrates the correlation between customers' realization of the

---

[4] Plaintiffs' Declarations offer various opinions as to why their tips are only negatively impacted by the service provided by service bartenders.  Defendant has objected to such speculation in this Reply and asks that it be given no evidentiary consideration.  To the extent that such opinions are admissible, however, Defendant believes that such "evidence" only supports its position for the reasons discussed herein.

[5] In its Motion, Defendant offered evidence of the effect of customers standing at bars awaiting drinks and competing with the attention of bartenders for servers who are also waiting for bartenders to fill orders for the seated

service provided by the bartenders and the tips that they leave for the service team. Through their own (largely inadmissible) testimony, Plaintiffs speculate that the services provided by the service bartenders do not positively impact the amount of tips left by customers, but their own declarations identify several ways in which the service bartenders may, in their opinions, negatively impact their tips. Such testimony, if admissible, clearly demonstrates not only some of the bases for MTC's beliefs regarding inclusion of the service bartenders in the customer service team (*see* Def.'s Mot. Summ. J. at 7-9), but also helps to establish the realization by customers that their tip represents a tip on the entirety of the service provided by the customer service team – service bartenders included.

Finally, Plaintiffs' contentions regarding the percentage of customers who order drinks from the service bartenders (*see* Pls.' Resp. at 9) is irrelevant. This Court's previous Order denying their Motion for Partial Summary Judgment does not require, for example, that busboys and barbacks only customarily and regularly receive tips to the extent that each customer sees the busboy or barback providing a service to them, specifically, as opposed to providing a service to some other customer. Clearly, a busboy or barback's eligibility for inclusion in a tip pool is not determined on a customer by customer basis, allowing the busboy or barback to be included in a tip pool for only those customers as to whom they specifically provided a service. Nowhere in this Court's prior Order or any other authority is such a suggestion made, and Plaintiffs' "evidence" that not all customers order drinks from the service bartenders cannot be said to have any relevance to this Court's ruling on MTC's Motion for Partial Summary Judgment.

---

customers. (*See* Def.'s Mot. Summ. J. at 7-8). Plaintiffs' opinions that customers do not appreciate the possible delay caused by long lines at the bars, and that such delays negatively impact the tips left at the table, supports the rationale for having a service bar provided in Defendant's Motion for Partial Summary Judgment.

7

**E.      Service Bartenders Are Not Bussers, and Such Fact is Irrelevant**

Plaintiffs also contrast the extent of direct customer interaction between MTC's service bartenders and bussers. (Pls.' Resp. at 10-11).  Such comparison is nothing more than another attempt to implicitly require direct customer interaction.  This Court has already rejected any contention that direct customer interaction is required.  That MTC's busboys have more direct customer interaction than its service bartenders is neither disputed nor dispositive, and such fact does not have any relevance to the Court's ruling on MTC's Motion for Partial Summary Judgment.

**F.      Mi Tierra's Service Bartenders Are Not Different from Barbacks**

Finally, Plaintiffs contrast MTC's service bartenders to barbacks, referenced in this Court's Order denying their Motion for Summary Judgment and a DoL opinion letter finding that such individuals are properly included in a tip pool.  (*See* Pls.' Resp. at 11-12).  As with Plaintiffs' comparison of MTC's service bartenders to the busboys, such comparison fails to preclude summary judgment for Defendant.

Plaintiffs argue that the distinction between MTC's service bartenders and the barbacks referenced in the DoL opinion letter are important both because "barbacks more directly support their public bartenders" and because "barbacks are much more likely to interact directly with customers than Mi Tierra's bartenders." (Pls.' Resp. at 11).  As to the latter, it is clear that this is nothing more than a blatant attempt to again require direct customer interaction.  In denying Plaintiffs' Motion for Partial Summary Judgment, this Court specifically recognized that both barbacks and the service bartenders "seem to have little direct customer interaction . . . ." (Order Denying Pls.' Mot. Part. Summ. J. at 12).  That barbacks <u>may</u> have more direct customer

8

interaction than a service bartender is neither proven by Plaintiffs' Response nor relevant to the present inquiry.

With respect to Plaintiffs' contention that barbacks more directly support their public bartenders, Plaintiffs offer nothing more than their apparent speculation that the barbacks' support of a bartender would be much more visible to a customer than would the service bartenders' support of the servers in making and providing drinks.  (*See* Pls.' Resp. at 11-12).  As proven in Defendant's Motion, the service bars are built so as to draw the attention of customers to the display of alcoholic beverages and the elaborate decoration of the bar itself. (*See* Def.'s Mot. Summ. J. at 8-9).  Further, as their own speculative and conclusory declaration testimony establishes, customers <u>DO</u> notice the services taking place at the bars – attention that, on occasion, results in a customer actually asking to be relocated.  The duplicity of Plaintiffs' positions is apparent, and their contradictory positions ("service bartenders can't be included because not everyone can see them" versus "the work of the service bartenders is disruptive and negatively impacts my tips") cannot serve to create a genuine issue of material fact to preclude summary judgment to Defendant on this matter.

**IV.**
**OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE**

**A.**     **Conflicting Testimony Should Be Stricken.**

MTC objects to Plaintiff Virginia Barrera's ("Plaintiff Barrera") Declaration, attached to Plaintiffs' Response as Exhibit 1.  Plaintiff Barrera's Declaration contravenes her own deposition testimony; as such, MTC objects to such portions of her Declaration as constituting a "sham" affidavit within the meaning of controlling authority.   Specifically, Plaintiff Barrera's Declaration states that, "Based on my experience as a server at Mi Tierra, it is extremely rare that anything the bartenders do or fail to do would have any effect [sic] the amount of a customer's

9

tip" and "[i]n the rare circumstance that a bartender's actions might affect the amount of a customer's tip, it would cause the tip to be less." (Pls.' Resp., Exhibit 1, ¶4). Plaintiff cites an example of this occurring to her: "For example, I might have to wait several minutes to place an order. This can cause a delay in getting the drinks to the customer and can cause the customer to be unhappy, possibly resulting in a lower tip." (*Id.*) Plaintiff adds that "… in my experience, except in *extremely* rare circumstances, customers tip based on the service they receive from their server, and not based on the actions of any other employee in the restaurant." (*Id.*, ¶5).

Plaintiff Barrera's deposition testimony on this subject is well-developed, and she has clearly prepared a self-serving and contradictory Declaration with the sole intent of overcoming summary judgment. When asked in her deposition whether "a lousy service bartender" had affected her tips in her deposition, Plaintiff testified that "lousy" service from a bartender had "not [affected her tips] in [her] experience." (*See* MTC's Mot. for Part. Summ. J., Exhibit R at 146). Additionally, in response to a question about "if the table is happy, the table tips all of you… [t]he tip that is included is a tip that you then share with your service bartender," Plaintiff responded "correct" and added "it goes both ways." (*See* MTC's Mot. for Part. Summ. J., Exhibit R at 148). Although presented with the opportunity to correct any deposition testimony that was incorrect, Plaintiff Barrera failed to submit an errata sheet to her deposition. (*See* MTC's Mot. for Part. Summ. J., Exhibit R at 163).

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5ᵗʰ Cir. 2000) (internal citations omitted). Plaintiff Barrera does not even offer an explanation for her irreconcilable and

contradictory Declaration testimony, which serves as a basis for nullification of her Affidavit. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) (requiring an explanation when a party's affidavit conflicts with prior sworn testimony); *Doe ex rel. Doe*, 220 F.3d at 386. Because Plaintiff's Declaration merely consists of contradictory evidence in an attempt solely to avoid summary judgment, MTC objects to Paragraphs 4 and 5 and asks that they be stricken from the record and given no evidentiary consideration in this matter.

**B.     Conclusory and Speculative Testimony Cannot Preclude Summary Judgment**

"The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). As has been recognized on numerous occasions by the Fifth Circuit, "conclusory allegations supported by a conclusory affidavit will not suffice to require a trial." *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (*quoting Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) ("Conclusory statements are not competent evidence to defeat summary judgment."). "[S]elf-serving allegations [in an affidavit by a party] are not the type of significant probative evidence required to defeat summary judgment." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (internal quotations and citation omitted); *see also Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998). Because Plaintiffs' Declarations are largely conclusory and speculative, at least with respect to those portions identified herein, Defendant objects to such Declarations pursuant to FED. R. CIV. P. 56(c)(4) and FED. R. EVID. 602 and asks that such portions be given no evidentiary consideration by the Court.

Plaintiff Barrera speculates in her Declaration that "I believe that part of one bar is partially visible to customers seated in the booths in the ABC dining room, but I do not believe those customers can actually see the bartenders." (Barrera Decl. at 1 (Para. 3)). On its face, such a statement reflects the speculative nature of her best guess as to whether customers can see the service bartenders. Additionally, Barrera states, "Based on my experience as a server at Mi Tierra, it is extremely rare that anything the bartenders do or fail to do would have any effect [sic] the amount of a customer's tip. In the rare circumstance that a bartender's actions might affect the amount of the customer's tip, it would cause the tip to be less." *Id.* (Para. 4). Such a statement regarding the limited occasions when a tip might be affected and the allegedly negative impact on her tip are patently conclusory and offer no basis for such testimony. Barrera further speculates that "when the line at the bar is long . . . [t]his can cause a delay in getting the drinks to the customer and can cause the customer to be unhappy, possibly resulting in a lower tip." *Id.* "The same thing can happen when kitchen workers do not have customers' food prepared promptly or when they make mistakes in preparing the orders, which may also result in a lower tip." *Id.* at 1-2 (Para. 4). Barrera offers no basis for her opinion that the tips are lower in the situations identified, and the statements reflect on their face the mere *possibility* that a tip could be lower, thus demonstrating the speculative nature of the testimony offered. Barrera also testifies that, "[C]ustomers tip based on the service they receive from their server, and not based on the actions of any other employee in the restaurant." *Id.* at 2 (Para. 5). Such a statement is conclusory and offers no basis for such speculation that a customer does not tip for the service provided by anyone in the restaurant but the server. The "sham" nature of such testimony is also apparent by the fact that this speculation directly follows a paragraph allegedly identifying all of the ways in which other employees' service can negatively impact Barrera's tip. Finally, Barrera

12

speculates that, "In fact, having the bartenders do their work in the open as they do at Mi Tierra often has a negative impact on the customer service experience." *Id.* (Para. 6). Such a statement is clearly conclusory and based, apparently, on a limited number of "examples." Although her Declaration provides alleged examples of customer requests to be moved because of the noise and activity caused by the service bars, *see id.*, testimony regarding such alleged requests and the bases therefore is hearsay; Defendant objects on such basis. *See* Fed. R. Evid. 801 and 802; Fed. R. Civ. P. 56(c)(4).

Like Barrera, Plaintiff Saldana speculates in his Declaration that, "To the best of my recollection, customers seated in the middle dining room or the Jardin cannot see the bartenders at all. I believe that part of one bar is partially visible to customers seated in the booths in the ABC dining room, but I do not believe those customers can actually see the bartenders." (Saldana Decl. at 1 (Para. 3)). Such statements are speculative as to whether customers can see the service bartenders. Additionally, Saldana also testifies that, "[C]ustomers tip based on the service they receive from their server, and not based on the actions of any other employee in the restaurant." *Id.* (Para. 4). Such a statement is conclusory and offers no basis for such speculation that a customer does not tip for the service provided by anyone in the restaurant but the server. Finally, Saldana speculates that, "In fact, having the bartenders do their work in the open as they do at Mi Tierra often has a negative impact on the customer service experience." *Id.* (Para. 5). Such statement is clearly conclusory and based, apparently, on a limited number of "examples." His Declaration provides alleged examples of customer requests to be moved because of the noise and activity caused by the service bars, *see id.* at 1-2, but testimony regarding such alleged requests and the bases therefore is hearsay; Defendant objects on such basis. *See* Fed. R. Evid. 801 and 802; Fed. R. Civ. P. 56(c)(4).

3646269.3

Plaintiff Menchaca also speculates in her Declaration that, "To the best of my recollection, customers seated in the main dining room or the Jardin cannot see the bartenders at all. Part of one bar may be partially visible to customers seated in the booths in the ABC dining room, but I do not believe those customers can actually see the bartenders." (Menchaca Decl. at 1 (Para. 3)).   Such statements are speculative as to whether customers can see the service bartenders.  Additionally, Menchaca states, "Based on my experience as a server at Mi Tierra, it is extremely rare that anything the bartenders do or fail to do would have any effect [sic] the amount of a customer's tip.  In the rare circumstance that a bartender's actions might affect the amount of the customer's tip, it would cause the tip to be less." *Id.* (Para. 4).   Such a statement regarding the limited occasions when a tip might be affected and the allegedly negative impact on her tip are patently conclusory and offer no basis for such testimony.  Menchaca also testifies that, "[C]ustomers tip based on the service they receive from their server, and not based on the actions of any other employee in the restaurant." *Id.* at 2 (Para. 5).   Such a statement is conclusory and offers no basis for such speculation that a customer does not tip for the service provided by anyone in the restaurant but the server.  Finally, Menchaca speculates that, "In fact, having the bartenders do their work in the open as they do at Mi Tierra often has a negative impact on the customer service experience." *Id.* (Para. 5).   Such a statement is clearly conclusory and based, apparently, on a limited number of "examples."  Her Declaration provides alleged examples of customer requests to be moved because of the noise and activity caused by the service bars, *see id.*, but testimony regarding such alleged requests and the bases therefore is hearsay; Defendant objects on such basis. *See* Fed. R. Evid. 801 and 802; Fed. R. Civ. P. 56(c)(4).

14

Plaintiff Garces further speculates in her Declaration that, "To the best of my recollection, customers seated in the main dining room, the Jardin or the ABC dining room cannot see the bartenders at all." (Garces Decl. at 1 (Para. 3)). Such statements are speculative as to whether customers can see the service bartenders. Additionally, Garces states, "Based on my experience as a server at Mi Tierra, it is extremely rare that anything the bartenders do or fail to do would have any effect [sic] the amount of a customer's tip. In the rare circumstance that a bartender's actions might affect the amount of the customer's tip, it would cause the tip to be less." *Id.* (Para. 4). Such a statement regarding the limited occasions when a tip might be affected and the allegedly negative impact on her tip are patently conclusory and offer no basis for such testimony. Garces further testifies that, "This has happened when the line at the bar is long and I've had to wait several minutes to place an order, or when the bar ran out of a particular item. This might have caused my tip to be less, just like delays in getting food prepared or mistakes in food orders may cause the customer to tip less." *Id.* Garces offers no basis for her opinion that the tips are lower in the situations identified, and the statements reflect on their face the mere possibility that a tip could be lower (guessing only that they "might" be), thus demonstrating the speculative nature of the testimony offered. Garces also testifies that, "[C]ustomers tip based on the service they receive from their server, and not based on the actions of any other employee in the restaurant." *Id.* at 2 (Para. 5). Such a statement is conclusory and offers no basis for such speculation that a customer does not tip for the service provided by anyone in the restaurant but the server. The "sham" nature of such testimony is also apparent by the fact that this speculation directly follows a paragraph allegedly identifying the ways in which other employees' service can negatively impact Garces' tip. Finally, Garces speculates that, "In fact, having the bartenders do their work in the open as they do at Mi Tierra often has a negative

15

impact on the customer service experience." *Id.* (Para. 6).  Such a statement is clearly conclusory and based, apparently, on a limited number of "examples." Her Declaration provides alleged examples of customer requests to be moved because of the noise and activity caused by the service bars, *see id.*, but testimony regarding such alleged requests and the bases therefore is hearsay; Defendant objects on such basis.  *See* FED. R. EVID. 801 and 802; FED. R. CIV. P. 56(c)(4).

For the reasons identified herein, Defendant objects to these portions of the Declarations submitted by Plaintiffs and ask that they be given no evidentiary consideration by the Court.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that the Court sustain MTC's objections to Plaintiffs' summary judgment evidence, grant the Motion for Partial Summary Judgment, hold as a matter of law that Mi Tierra's tip pool is valid as to all participants, and grant such other and further relief to which Defendant is justly entitled.

3646269.3

Respectfully submitted,

**COX SMITH MATTHEWS INCORPORATED**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone:   (210) 554-5500
Facsimile:   (210) 226-8395

By:   _/s/ Ramon D. Bissmeyer_
    **Ramon D. Bissmeyer**
    State Bar No. 00787088
    rbissmeyer@coxsmith.com
    **Cora C. McGowan**
    State Bar No. 24060258
    cmcgowan@coxsmith.com

**DAVIS, CEDILLO & MENDOZA, INC.**
McCombs Plaza, Suite 500
755 East Mulberry Avenue
San Antonio, Texas 78212
Telephone: (210) 822-6666
Facsimile: (210) 822-1151
**Ricardo G. Cedillo**
State Bar No. 04043600
rcedillo@lawdcm.com
**Mark W. Kiehne**
State Bar No. 24032627
mkiehne@lawdcm.com

**ATTORNEYS FOR DEFENDANT,
MTC. INC. d/b/a MI TIERRA
CAFÉ AND BAKERY**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 11th day of October, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Jeremi K. Young
    THE YOUNG LAW FIRM, PC
    112 W. 8th Ave., Suite 900-D
    Amarillo, Texas 79101
    jyoung@youngfirm.com

                    _/s/  Ramon D. Bissmeyer_
                    Ramon D. Bissmeyer
                    Cora C. McGowan
                    Attorneys for Defendant

17

3646269.3